UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X          05 CV 2973 (NG) (JMA)
DCH AUTO GROUP (USA), INC.,

               **Plaintiff,**

    -against-                                             **OPINION AND ORDER**

FIT YOU BEST AUTOMOBILE, INC.,

               **Defendant.**
-------------------------------------------------------------------X

**GERSHON, United States District Judge:**

Defendant Fit You Best Automobile, Inc. ("FYB") moves this court to vacate the default judgment it awarded plaintiff DCH Auto Group (USA), Inc. ("DCH") and to re-open this case pursuant to Federal Rules of Civil Procedure 60(b)(4) and 60(b)(1). For the reasons set forth below, FYB's motion is denied.

## FACTS

**Procedural History**

On June 21, 2005, DCH initiated this action by filing a complaint with the court and thereafter served a copy of the summons and complaint on FYB on June 22, 2005.[1] In sum and substance, DCH sought monetary and injunctive relief arising from FYB's alleged violations of its trademark, the Dah Chong mark. After FYB failed to answer or otherwise respond to the complaint, on August 10, 2005, DCH filed a motion for default judgment. Pursuant to Fed. R. of Civ. P. 55(a), the Clerk of Court entered a notation of defendant's default on October 7, 2005. By order dated October 17, 2005, the court granted default judgment in favor of plaintiff and referred the matter to

---

[1] FYB argues that it was not properly served. I address that argument below.

the Honorable Joan M. Azrack, United States Magistrate Judge, for a report and recommendation ("R&R") concerning the relief that should be granted to plaintiff. On February 3, 2006, the court adopted Judge Azrack's R&R in full, granting plaintiff's application for a permanent injunction and awarding plaintiff costs in the amount of $668.77 and attorney's fees in the amount of $36,388.46. The injunction permanently enjoins FYB from, *inter alia*, using the Dah Chong mark to identify itself or any goods or services it offers. FYB had not filed any objections to Judge Azrack's R&R.

On February 15, 2006, the Clerk of Court entered judgment against defendant in accordance with the court's February 3, 2006 order. In response to DCH's request, on February 23, 2006, the court amended its February 3, 2006 order to include express reference to DCH's trademark, the Dah Chong mark, in Chinese characters for purposes of identification. Afterwards, on March 9, 2006, the Clerk of Court entered an amended judgment to reflect the change.

**FYB's Failure to Respond**

More than two months prior to filing the complaint, DCH began attempting to contact FYB. On April 20, 2005, Maria Lin, a partner of Morgan & Finnegan, LLP, DCH's counsel, wrote a letter to Mr. Y. Kong of FYB regarding FYB's infringing use of DCH's trademark (the Dah Chong mark). Thereafter, on June 10, 2005, George Liang, Senior Vice President and Regional Manager of DCH, wrote letters in both English and Chinese to FYB regarding FYB's infringing use of DCH's trademark. FYB failed to respond to either letter.

After the complaint was filed and served, on June 21 and 22, respectively, DCH continued to attempt to contact FYB. On July 14, 2005, two days after FYB's time to answer the complaint had expired, Maria Lin and Jeffrey Liao, an associate at Morgan & Finnegan, LLP, participated in a series of phone calls with FYB. During each phone call, Ms. Lin communicated with the

2

individual who answered the phone in both English and Mandarin Chinese, attempting to discuss the case. Each time, however, the individual who answered the phone refused to participate in the telephone conversation.

Four days later, on July 18, 2005, Janet Dore, a partner of Morgan & Finnegan, LLP, sent a letter to FYB via Federal Express explaining that the time to file an answer had elapsed, and inquiring as to whether FYB intended to file an answer and whether FYB was represented by an attorney. Ms. Dore also informed FYB that DCH would move for default judgment should FYB fail to answer or otherwise respond to the complaint. This letter was delivered to FYB's address on July 19, 2005 and signed for by an M. Sher. No response was received from FYB, and on August 10, 2006, DCH served by hand copies of its notice of motion for default judgment, a proposed entry of default judgment, a proposed default judgment and permanent injunction, a memorandum of law in support of DCH's motion, and the declarations of Janet Dore and Jeffrey Liao in support of the motion.

As indicated above, the court entered an order, dated October 17, 2005, for judgment by default to DCH and referred the matter to Magistrate Judge Joan M. Azrack for R&R. On January 10, 2006, Judge Azrack issued her R&R, a copy of which was mailed to FYB. FYB filed no objections. Ultimately, as described above, the court adopted the R&R, and judgment was entered against FYB.

DCH continued to contact FYB after the judgment for relief was entered. Specifically, on February 7, 2006, Gerard Haddad, a partner of Morgan & Finnegan, LLP, served *via* a process server on FYB a letter alerting it of the court's entry of default judgment, enclosing the R&R as well as the order adopting the R&R, and requesting that FYB pay the judgment of attorney's fees and

3

costs. Thereafter, on March 13, 2006, Danielle Tully, an associate of Morgan & Finnegan, LLP, served *via* a process server on FYB a letter alerting it to the court's entry of default judgment, enclosing the R&R as well as the amended order adopting the R&R and the amended judgment, and requesting that FYB pay the judgment of attorney's fees and costs. As with DCH's previous attempts to contact FYB, these communications were ignored.

On May 10, 2006, Gerard Haddad again contacted FYB *via* Certified Mail, again informing FYB of the judgment against it and requesting that FYB pay the judgment of attorney's fees and costs. Finally, on June 21, 2006, a year after the case had been initiated, Danielle Tully again contacted FYB *via* First Class Mail, again informing FYB of the judgment against it and requesting that FYB pay the judgment of attorney's fees and costs. Once again, FYB did not respond.

More than five months later, on November 22, 2006, FYB wrote to the court asking permission to file its motion to vacate the default judgment. On January 16, 2007, the court held a pre-motion conference, during which the parties were instructed to attempt to settle this issue prior to filing any motion to re-open this case. Because the parties were not able to settle the issue, FYB filed its motion to vacate the default judgment on March 29, 2007.

## DISCUSSION

**I.     Standard of Review**

Fed. R. Civ. P. 55(c) states that a court may set aside an entry of default for good cause shown, in accordance with Rule 60(b). A motion to vacate a default judgment is "addressed to the sound discretion of the district court." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citation omitted). However, courts within this circuit have long "expressed a strong preference for resolving disputes on the merits." *Id*. (internal quotation marks and citation omitted). Accordingly, and

4

because a default judgment is "the most severe sanction which the court may apply," in ruling on a motion to vacate a default judgment, "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *Id*. (citations omitted).

## II. FYB's Motion to Vacate the Court's Judgment of Default

FYB makes two arguments in support of its motion. First, FYB contends that the default judgment rendered against it is void for lack of service pursuant to Rule 60(b)(4). Second, FYB argues that, even if service were proper, the default judgment should nevertheless be vacated on the basis of excusable neglect, due to lack of notice, pursuant to Rule 60(b)(1). I will address each argument in turn.

### A. Rule 60(b)(4)

Fed. R. Civ. P. 60(b)(4) provides that a court may grant a motion to vacate a default judgment if "the judgment is void." FYB argues that the default judgment should be vacated, pursuant to Rule 60(b)(4), because FYB was not properly served with the summons and complaint, and, therefore, was never subject to personal jurisdiction. I disagree.

On June 22, 2005, Donald Hom, Paralegal Manager at Morgan & Finnegan, LLP, visited the principal place of business of FYB, located at 55-02 Main Street, Flushing, NY 11355, with a copy of the summons and complaint in this action. At this time, Mr. Hom personally and properly served process *via* in-hand delivery to Yun Ying Liu, who represented himself as an employee of FYB, and who acknowledged receipt at 2:10 PM on the delivery log prepared by Mr. Hom. Mr. Hom attested to these facts in his declaration filed with the court on September 16, 2006.

FYB argues that DCH's service does not comport with the dictates of Fed. R. Civ. P. 4(h).

5

In short, FYB contends that, when serving a corporation, copies of the summons and complaint must be delivered to an officer or agent of the corporation. FYB states, in its motion papers, that Yun Ying Liu was neither an officer or agent. In fact, FYB contends that Mr. Liu has never been an employee of FYB. FYB offers no explanation, however, of why Mr. Liu represented himself as an employee of FYB, or why he accepted process on its behalf.

The Federal Rules provide that a summons and complaint may be served on a corporation "pursuant to the law of the State" in which the District Court is located. *See* Fed. R. Civ. P. 4(h)(1) (referring to Fed. R. Civ. P. 4(e)(1)). New York allows service based on delivery of the summons and complaint "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other authorized by appointment or by law to receive service." N.Y. Civ. Prac. L & R. § 311. "It is not unusual for a corporation's employees to accept service of process on behalf of the corporation's officers." *Adidas Sportschuhfabriken Adi Dassler Stiftung & Co. v. Cheung*, No. 87-8989, 1990 WL 48063, at *4 (S.D.N.Y. Apr.10, 1990) (citing *M. Prusman, Ltd. v. Ariel Maritime Group*, 719 F. Supp. 214, 220 (S.D.N.Y. 1989)). When this occurs, service may be valid, even if the employee were expressly unauthorized by the corporation to accept service, because a "process server cannot be expected to know the corporation's internal practices." *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 271 (1980). The New York Court of Appeals has commented: "if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained." *Id.* at 272.

I find that Yun Ying Liu should, under the circumstances described above, be considered to have accepted service on behalf of FYB's officers. When Mr. Hom arrived at FYB's principal place of business on June 22, 2005, Mr. Liu was present, represented himself as an employee of FYB,

6

accepted process, and signed the delivery log prepared by Mr. Hom, acknowledging receipt of process. In light of these facts, and because FYB is a very small business with few employees, DCH reasonably believed that its service of process provided FYB with notice of this action. Accordingly, service of process on Mr. Liu was sufficient to obtain personal jurisdiction over FYB.

In addition, FYB's contention that they did not have actual notice of the lawsuit is implausible. DCH made numerous telephone calls and sent several letters to FYB concerning the action both before and after process was served. It did so in both English and Chinese. Accordingly, I find that FYB did have actual notice of the action. "Though not dispositive of the question of adequacy of service of process, such notice is evidence that the legislative goal of fair notice, which underlies the rules of service of process, has been fulfilled." *Velez v. Vassallo*, 203 F. Supp. 2d 312, 323 (S.D.N.Y. 2002) (internal quotation marks and citation omitted); *cf. OR.EN. Orobia Eng'g S.R.L. v. Nacht*, No. 97-4912, 1998 WL 730562, at *5 (S.D.N.Y. Oct. 19, 1998) (noting that courts have construed N.Y. C.P.L.R. 311 "very liberally" and upheld service by any means "reasonably calculated to give notice" to the corporation) (internal quotation marks and citation omitted).

### B. Rule 60(b)(1)

Rule 60(b)(1) provides, in pertinent part, that a court may grant a motion for relief from a judgment on the ground of "excusable neglect." Such a motion must, however, be brought within one year of entry of judgment. *See* Fed. R. Civ. P. 60(b)(1) ("The motion shall be made . . . not more than one year after the judgment, order, or proceeding was entered or taken."); *see also Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 393 (1993) ("Rule 60(b)(1) . . . permits courts to reopen judgments for reasons of 'mistake, inadvertence, surprise, or

excusable neglect,' but only on motion made within one year of the judgment.") (citation omitted). The one year "limitations period is absolute," *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (internal quotation marks and citation omitted), and "runs from the date the judgment was entered in the district court." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2866, at 390 (2d ed. 1995).

To establish that it is entitled to relief based on excusable neglect, a defendant must establish that (1) its default was not willful, (2) it has a meritorious defense, and (3) vacating the default will not result in unfair prejudice to plaintiff. *Green*, 420 F.3d at 108. In addressing the first factor, the Court of Appeals has stressed that "[t]he basic purpose of default judgment is to protect parties from undue delay-harassment.'" *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996) (internal quotation marks omitted). Thus, wilfulness in the context of a judgment by default requires "something more than mere negligence," such as "egregious or deliberate conduct." *Id*. at 60, 61.

The second factor under Rule 60(b) concerns the existence of a meritorious defense. *See Green*, 420 F.3d at 109. "[T]he absence of such a defense is sufficient to support [a] district court's denial of a Rule 60(b) motion." *Id*. In order to make a sufficient showing of a meritorious defense "the defendant need not establish his defense conclusively, but . . . must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (internal citations and quotation marks omitted).

The final Rule 60(b) factor, whether and to what extent vacating the default judgment will prejudice the non-defaulting party, has also been addressed by the Court of Appeals. Indeed, the court has stated that, because "[s]ome delay is inevitable when a motion to vacate a default judgment is granted . . . , delay alone is not a sufficient basis for establishing prejudice." *Green*, 420 F.3d at

109 (internal quotation marks omitted). Something more is needed. For example, delay "may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2699, at 169 (3d ed.1998)).

As a threshold matter, DCH argues that FYB's motion to vacate is untimely. In doing so, DCH assumes that the one year limitations period on FYB's excusable neglect claim began to run on October 17, 2005, when this court granted judgment by default. DCH then concludes that FYB's letter seeking relief from that judgment, dated November 22, 2006, was submitted "[m]ore than 13 months after default judgment was entered." Pl.'s Mem. at 8. DCH is incorrect. Although an order granting a default judgment was issued on October 17, 2005, the limitations period did not begin to run until February 9, 2006, when judgment was "*entered* in the district court."[2] 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2866, at 390 (2d ed. 1995) (emphasis added). Because FYB submitted its November 22, 2006 letter within one year of entry of the default judgment, I find that its excusable neglect claim is timely.[3]

---

[2] The October 17, 2005 order both granted default judgment and referred the matter to Judge Azrack for R&R on proper relief. On February 3, 2006, the court adopted Judge Azrack's R&R in full. The Clerk of Court entered judgment accordingly on February 9, 2006. The court then amended its February 3, 2006 order to include express reference to DCH's trademark in Chinese characters. Afterwards, on March 9, 2006, the Clerk of Court entered an amended judgment to reflect that change. As the amended judgment is, in relevant part, identical to its predecessor, I find that the date of entry of the original judgment controls. *Cf., Farkas v. Rumore*, 101 F.3d 20, 23 (2d Cir. 1996) ("Where a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment, the time for appeal runs from the first judgment.").

[3] I note that "[t]he one-year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time' even though the one-year period has

9

Although timely, FYB's request for relief is unpersuasive. With regard to the first factor, FYB fails to show that its default was not willful. The sum total of FYB's argument on this point is that, because it was not properly served with process, it "only became aware of the instant action when it was served with a Marshal's notice dated October 31, 2006." Def.'s Mem. at 4. In making this argument, FYB omits mention of the numerous phone calls and letters DCH made and sent to FYB regarding this action. Indeed, FYB explains neither how it maintained its ignorance during this time nor why it refused to respond to DCH's repeated contacts. Finally, FYB fails to explain why it was not made aware of this action by receipt of Magistrate Azrack's R&R, which was mailed to FYB's principal place of business on January 10, 2006. When viewed in total, the facts before the court undermine FYB's contention that it was unaware of this action until October of 2006. Accordingly, I find that FYB's "deliberate" failure to respond to both DCH and the court constitutes gross negligence and willful default. *Am. Alliance,* 92 F.3d at 60.

Because FYB was grossly negligent and willful in its default, and in light of the late date on which FYB filed its motion, it is unnecessary to evaluate the remaining factors. In sum, FYB has failed to show that its neglect in defending this action was excusable.

---

not expired." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2866, at 390 (2d ed. 1995). *See Amoco Overseas Oil v. Compagne Nationale Algerienne*, 605 F.2d 648, 656 (2d Cir.1979) ("Although the fact that a motion was made barely within the one-year time limit gives the court the *power* to entertain it, as the delay approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was reasonable.") (emphasis in original); *Sasso v. M. Fine Lumber Co., Inc.*, 144 F.R.D. 185, 188 (E.D.N.Y. 1992) (denying as untimely Rule 60(b)(1) motion filed nine months after the entry of the default judgment); *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, 541-542 (S.D.N.Y. 1985) (holding that Rule 60(b)(1) motion brought five months after entry of default judgment and two months after defendant received notice of default judgment was untimely). FYB's letter indicating its intent to make the current motion, filed nine months after entry of judgment, comes dangerously close to being untimely.

## CONCLUSION

For the reasons set forth above, FYB's motion to vacate the default judgment is denied.

SO ORDERED.

/s/
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
September 11, 2007